SMALLWOOD v. LIFE INSURANCE CO. OF VIRGINIA.

(Filed September 22, 1903.)

1. INSURANCE—*Life Insurance—Premiums—Policy—Estoppel.*

Where an insurance company, by inadvertence, sends notice to a policy-holder for a less premium than that due, it is not estoppel, upon discovery of the error, from collecting the proper amount.

2. INSURANCE—*Premiums—Fraud—Issues.*

Where a complaint in an action to recover premiums alleges fraudulent misrepresentations as to the earnings of the company and the application thereof, it is proper to submit an issue as to fraud.

3. INSURANCE—*Premiums—Payment of Premiums—Delay.*

Under the facts of this case, the delay in payment of the proper amount of premium is not such as to deprive the policy-holder of the right to pay that amount and have his policy continued.

ACTION by S. W. Smallwood against the Life Insurance Company of Virginia, heard by Judge *G. S. Ferguson* and a jury, at May Term, 1903, of the Superior Court of CRAVEN County. From a verdict for the plaintiff the defendant appealed.

*D. L. Ward* and *Simmons & Ward,* for the plaintiff.
*W. W. Clark,* for the defendant.

CLARK, C. J. On 27th December, 1886, the defendant issued to the plaintiff a policy of insurance upon his life in the sum of three thousand dollars, in which it was stipulated that the premium should remain at the rate charged for the then age of the insured for five years, that the policy should then be renewed for another five years, the insured paying the

rate charged "by the published rates of the company" for the age the insured should have attained at the beginning of this second five years, and so on with a similar raise according to the age in said "published rates," at the beginning of each successive period of five years. The premium was payable bi-monthly and it appeared that the insured paid as required "by the published rates of the company," the bi-monthly premium of $6.72 for the first five years, $7.59 for the next five years and $8.76 for the next five years. That at the beginning of the next five years, December, 1901, the rate by said published rates was $10.68. By some clerical error, as the defendant claims, notices for the first three bi-monthly payments were sent out for the premiums and they were collected, at the old rate, $8.76, and the evidence shows that the defendant notified the plaintiff of the mistake and that the payment 27th June, 1902 (next falling due thereafter), must be paid as required by the terms of the policy and "the published rates," $10.68. The plaintiff insisted that the defendant was estopped by having already received three bi-monthly payments on the new five-year period at $8.76 and sent a check for that sum for the payment of the premium due 27th June, 1902, which was returned to him. Considerable correspondence ensued, till finally on 16th September, 1902, the plaintiff notified the defendant that on the advice of the State Insurance Commissioner he would pay the $10.68 premium and sent the company a check for $21.36 for the two premiums then due (for 27th June and 27th August). The company declined to receive this on the ground that his policy having been forfeited by failure to meet those payments, it could only be re-instated by undergoing a new medical examination. This the plaintiff declined, and brings this action to recover all premiums paid, with interest, alleging wrongful cancellation. The plaintiff further alleged fraudulent representations, in that plaintiff was induced to

take the policy by the company's representations that there would be no increase in the premiums because dividends declared by the company would maintain the premium at a uniform rate. In the policy it is stated, "it is estimated that the dividends declared every five years will maintain the premiums at a uniform rate." The plaintiff contends that this provision and the further provision in *a paper (Exhibit B) sent with* the policy—"no dividends will be declared on this policy except at the end of each five-year period"—taken together with the sending out notices to him of $8.76 premium for the first three payments on the fourth five-year period, to-wit, 27th December, 1901, 27th February and 27th April, 1902, were sufficient, if not an estoppel on the defendant, at least to justify him in questioning *bona fide* the requirement of $10.68 on 27th June, and that having on 16th September, 1902, sent checks for $10.68 for June and August bi-monthly premium, which was not unreasonable delay in investigating his rights, the company should have received the payment. The plaintiff further introduced evidence to show that the company was earning $12\frac{1}{2}$ per cent. net annually, after paying exorbitant salaries, $23,000 to three principal officers of a company with a capital stock of $50,000, and tending to show that if the dividends had been properly declared from earnings, his premium for this five-year period would not exceed $8.76 bi-monthly, which sum he had tendered. The defendant pleaded the statute of limitations.

By consent, issues were agreed to be submitted as to the wrongful cancellation, as to the alleged fraud, and the statute of limitations. The Judge, however, at the close of the evidence refused to submit any issue except the first, and the defendant excepted. The defendant requested the Court to charge the jury "that if the defendant by mistake collected a less premium than the one established by the published rates, it was not compelled nor required in law to continue

133——2

to collect this smaller premium, but at the time, upon the discovery of the mistake, it had a right to demand and collect from the plaintiff the premium established by its published rates for the actual age of the plaintiff" (at the beginning of the fourth period of five years). The Court declined to so charge and in effect instructed the jury that the fact that the notice had been sent out for $8.76 for the first bi-monthly premiums at the beginning of that period estopped the company to claim the $10.68 payment at all during that five-year period. The defendant excepted to this refusal to charge as requested.

In these rulings there was error. If the notices were sent out at $8.76 by a clerical error or inadvertence, the company was not estopped to demand the succeeding premiums, after the discovery of the error, at $10.68, if that was the true rate. The plaintiff was entitled on the other hand to have tried and determined his charges of fraudulent misrepresentation and whether, if dividends were properly declared out of earnings and applied to premiums as promised in the policy, the amount legally due would exceed $8.76, the amount tendered. But if the jury shall determine that the dividends, if properly declared and applied, would not reduce the premiums to $8.76, we are further of the opinion that while the sending out notices for three bi-monthly premiums at $8.76, if done by mistake and inadvertence, would not estop the company upon discovery of such mistake from demanding payment of premiums thereafter at the true rate required by the terms of the policy, yet we are further of the opinion, in this Court of Equity as well as of Law, that if the plaintiff was misled by the provision in the policy that at the end of each term of five years dividends would be applied to reduce premiums, and *bona fide* believing that the notices and payment of three premiums was evidence of such application, then his delay till 16th September, occupied in correspond-

SMALLWOOD *v.* LIFE INSURANCE CO. OF VIRGINIA.

ence with the defendant and in asserting his rights, was not unreasonable, and that upon his tender then of the 27th June and 27th August premiums at $10.68, and expression of his willingness to pay at that rate, the company had no right to cancel the policy. Should such state of facts be established in the Court below, judgment should be rendered that if by a day named therein the plaintiff shall tender all bi-monthly premiums from 27th June, 1902, to said date, computed at $10.68, the defendant shall be ordered to re-instate the plaintiff as a policy-holder without further medical examination, and on refusal of the company, within a time specified in the order, to so re-instate the plaintiff, then judgment shall be rendered in favor of the plaintiff to recover all premiums paid, with interest, by reason of the wrongful cancellation of the policy and refusal to re-instate as ordered by the Court. But nothing herein shall be construed to prevent the plaintiff from proceeding in this action, should he so elect, upon the ground of fraudulent representations, and to show, if he can, that dividends had been earned which should have rightfully been declared and applied, and which would have reduced the premium, rightfully due, to $8.76 (the sum tendered 24th June, 1902) or less. For errors stated there must be a

New trial.